UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE ("USDA"), et al.,<br><br>Defendants. | Case No. 17-cv-03903-PJH<br><br>**ORDER GRANTING SUMMARY JUDGMENT FOR USDA**<br><br>Re: Dkt. Nos. 25, 26 |

Plaintiff Animal Legal Defense Fund's ("ALDF") motion for summary judgment, and defendants United States Department of Agriculture's ("USDA") and Animal and Plant Health Inspection Service's ("APHIS" and together, "defendants") cross-motion for summary judgment, came on for hearing before this court on March 28, 2018. Plaintiff appeared through its counsel, Justin Okun and Sarah Hanneken. Defendants appeared through their counsel, Daniel Halainen. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion and DENIES plaintiff's motion as follows.

**BACKGROUND**

This matter arises out of a Freedom of Information Act ("FOIA") request submitted by ALDF to APHIS, a component of the USDA, for records related to a medical inspection of a tiger named Tony. Plaintiff alleges defendants violated the FOIA by failing to expedite plaintiff's FOIA application for information related to Tony. The parties do not dispute the material facts. Dkt. 29 at 1 (claims "rest on the same purely legal dispute");

Dkt. 30 at 5 ("Like the vast majority of FOIA cases, no discovery was conducted and the Court is simply asked to make a legal ruling based on undisputed facts.").

Tony was a Siberian-Bengal Tiger kept in captivity at a gas station in Iberville Parish, Louisiana, known as the "Tiger Truck Stop." Compl. ¶¶ 1–2; Dkt. 26 at 2. The Animal Legal Defense Fund has been involved in litigation attempting to relocate Tony for some time. Compl. ¶ 18; Dkt. 26 at 3–4. During plaintiff's work on the case, veterinarian Dr. Jennifer Conrad, DVM, reviewed videos and photographs of Tony. Compl. ¶ 19; Dkt. 26 at 4. She expressed concerns regarding his health, and on April 7, 2017, ALDF requested that APHIS inspect the Tiger Truck Stop to determine if it was in violation of the Animal Welfare Act for failure to provide adequate veterinary care for Tony. Compl. ¶¶ 19–20; Dkt. 26 at 4. APHIS responded that it had received ALDF's request for an inspection and that ALDF needed to file a FOIA request to learn the results. Dkt. 26 at 5.

On May 4, 2017, ALDF submitted a FOIA request to APHIS for records regarding its request for inspection. Compl. ¶¶ 4, 21. Due to ALDF's belief that Tony's condition could be life-threatening, ALDF requested expedited processing of the FOIA request. ALDF stated that it believed expedited processing was warranted under Section 552(a)(6)(E)(v)(I) of the FOIA, which provides for expedited processing when "a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." Compl. ¶¶ 4, 21–24.

On May 11, 2017, defendants denied the request for expedited processing, stating that "Tony the Tiger is not considered an 'individual'" under the FOIA because "the term 'individual' in this matter only encompasses human beings." Compl. ¶ 25 & Ex. B. On May 22, 2017, ALDF appealed the denial of expedited processing and requested expedited processing of the appeal. Compl. ¶ 28 & Ex. C; Dkt. 26 at 5. On May 30, 2017, defendants acknowledged receipt of the appeal and stated that the target response date for the appeal would be June 26, 2017. Compl. ¶ 31 & Ex. D; Dkt. 26 at 5. However, defendants never responded to the appeal of the denial of expedited

2

processing. Compl. ¶ 32; Dkt. 26 at 5.

On July 11, 2017, plaintiff had not yet received records or a response regarding its appeal, and it filed this action seeking the records and challenging the denial of expedited processing. See Compl.; Dkt. 26 at 5–6. In addition, plaintiff sought prospective declaratory relief that the term "individual" encompasses nonhuman animals under Section 552(a)(6)(E)(v)(I) of the FOIA, as well as prospective injunctive relief generally requiring that defendants treat nonhuman animals as "individuals" for purposes of expedited processing under the FOIA. Compl. at 13.

On August 14, 2017, defendants substantively responded to the FOIA request. Dkt. 25 at 4; Dkt 25–1 ("Coleman Decl.") ¶ 9; Dkt. 26 at 6; Dkt. 27 ("Hanneken Decl.") ¶ 6 & Exs. C–D. On October 3, 2017, defendants informed plaintiff that they had "located, but have not released, additional potentially responsive records, which it currently estimates to total less than 100 pages" and stated that they would release the additional responsive records by October 20, 2017. Dkt. 26 at 6; Dkt. 21 (Joint CMC Statement) ¶¶ 2, 17.

On October 16, 2017, Tony was reportedly killed by his owner after suffering from health issues. Dkt. 26 at 2. On October 20, 2017, as planned, defendants provided forty-three additional pages of responsive, partially-redacted documents. Coleman Decl. ¶ 10; Dkt. 25 at 4; Dkt. 26 at 8.

Defendants have released the records plaintiff requested. Coleman Decl. ¶ 12. All work on plaintiff's request for records is complete, and plaintiff is not challenging the adequacy of defendants' production of records related to Tony. Dkt. 26 at 9 ("Defendants provided a complete record to Plaintiff").

On July 20, 2017 and August 18, 2017, ALDF submitted three unrelated FOIA requests for expedited processing to APHIS. Dkt. 26 at 6; Hanneken Decl. ¶ 7 & Exs. E–G. Two of those requests for expedited processing were denied, with APHIS contending that "individual" refers only to human beings. Dkt. 26 at 6–7; Hanneken Decl. ¶ 8 & Exs. H–I.

3

Plaintiff now requests three forms of relief: (1) a declaration that defendants unlawfully failed to comply with the expedited processing requirements of the Freedom of Information Act by asserting that the term "individual" under Section 552(a)(6)(E)(v)(I) of the FOIA encompasses human beings only; (2) a declaration that nonhuman animals are "individuals" within the meaning of Section 552(a)(6)(E)(v)(I) of the FOIA; and (3) a permanent injunction requiring defendants treat nonhuman animals as "individuals" for purposes of expedited processing under the FOIA.

**DISCUSSION**

**A.     Legal Standard**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Id.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. Id.

At summary judgment, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  "Most

4

FOIA cases are resolved by the district court on summary judgment[.]" Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987, 989 (9th Cir. 2016) (per curiam).

**B. Analysis**

The parties raise two issues: (1) whether the court has jurisdiction over plaintiff's cause of action; and (2) whether the term "individual" encompasses nonhuman animals under Section 552(a)(6)(E)(v)(I) of the FOIA.

**1. Whether the Court Has Jurisdiction to Decide the Issue**

Plaintiff does not dispute that, at this stage, it advances only a claim challenging defendants' policy or practice of interpreting the expedited review procedures in Section 552(a)(6)(E)(v)(1) of the FOIA to exclude Tigers; plaintiff does not advance any argument about its particular request for records related to Tony. Dkt. 30 at 3 ("The crux of Plaintiff's entire Complaint is a challenge to Defendants' policy and practice of interpreting the statute to exclude nonhuman animals."). As such, the court considers whether plaintiff has adequately pled a policy or practice claim and, if so, whether the court has jurisdiction to adjudicate that claim.

Defendants argue that plaintiff failed to adequately allege a policy or practice claim and that plaintiff should not be given leave to amend its pleading to do so now. Defendants further argue that the court lacks jurisdiction to adjudicate plaintiff's policy or practice claim, if plaintiff adequately pled such a claim, for two independent reasons: the FOIA statute itself at 5 U.S.C. § 552(a)(6)(E)(iv) divests the court of jurisdiction; and the court does not have Article III jurisdiction because there is no justiciable case or controversy.

**a. Whether Plaintiff Has Pled a Policy or Practice Claim**

Plaintiff argues that by seeking declaratory and injunctive relief, it has adequately pled a policy or practice claim. Defendants argue that plaintiff's claim does not plead a policy or practice claim under Federal Rule of Civil Procedure 8 because plaintiff's complaint only alleges a single count related to one FOIA request, and facts only supporting the same.

The Ninth Circuit has recognized two distinct types of FOIA claims: one challenging a specific agency action for improperly withholding records, and a distinct "pattern or practice" claim that the agency's policy or practice will impair the plaintiff's lawful access in the future. Hajro v. U.S. Citizenship & Immigration Servs., 811 F.3d 1086, 1102–03 (9th Cir. 2016).

The facts described in the complaint pertain mostly to an individual FOIA request for records relating to Tony, and much of the complaint describes the particular facts of that request. Compl. ¶¶ 1–4, 19–36. However, plaintiff alleges that it is a repeat player with respect to animal protection issues. Compl. ¶¶ 13, 16. It alleges that it is "engaged in the charitable work of gathering and disseminating information to the public regarding animal protection issues," including "USDA inspection reports and other agency records[.]" Compl. ¶ 13. Plaintiff alleges that one of its "core missions is to disseminate information to the public about animal exploitation and abuse" through such legal work. Compl. ¶ 16.

Furthermore, plaintiff clearly describes its claim as a purely legal question challenging defendants' policy of interpreting the relevant statute to exclude non-human animals. Compl. ¶¶ 5–9, 23–25, 29, 37–41. Plaintiff clearly and explicitly seeks both declaratory and injunctive relief that would go far beyond adjudicating the particular FOIA request for Tony's records. Compl. at 13. Plaintiff requests a declaration "that the term 'individual' encompasses nonhuman animals" and "a permanent injunction requiring USDA and APHIS to treat nonhuman animals as 'individuals' for purposes of processing FOIA expedited-processing requests[.]" Id.

Defendants rely on Muttitt v. Dep't of State, 926 F. Supp. 2d 284 (D.D.C. 2013) to argue that seeking declaratory and injunctive relief is not sufficient to plead a policy or practice claim. Dkt. 29 at 5–6. But Muttitt involved a very different complaint. In Muttitt, the plaintiff explicitly pled separate "policy or practice" claims with respect to certain agency actions, but not with respect to others. The court found that the plaintiff had not pled a policy or practice claim by seeking declaratory relief (where the plaintiff did not

plead a distinct policy or practice claim). Importantly, the plaintiff's request for declaratory relief in Muttitt was decidedly focused on the particular FOIA requests at issue in the case—not on declaratory relief with respect to a policy generally. The plaintiff argued that two of his requests for relief stated a policy or practice claim: "Order [the defendants] to grant [the plaintiff] public interest fee waivers where appropriate," and "Grant such other relief as the Court may deem just and proper." Muttitt, 926 F. Supp. 2d at 293. The plaintiff pointed to the words "where appropriate" and "other relief as the Court may deem just and proper" in his requests to argue that he adequately pled a policy or practice claim. Id. That court held such "boilerplate language commonly invoked in prayers for relief" did not satisfy "the fundamental purpose of the pleading standard set forth in Federal Rule of Civil Procedure 8"—"notice of policy-or-practice claims related to the denial of requests for expedited processing"—because "the language of the plaintiff's Prayer for Relief focuses on *specific* denials of requests for expedited processing[.]" Muttitt, 926 F. Supp. 2d at 293–94.

Plaintiff's clear, policy-focused requests for relief in this case are a far cry from the vague and case-specific requests for relief addressed in Muttitt. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Here, plaintiff alleged that defendants failed to properly expedite a records request based on a consistent, repeatable legal position that defendants have asserted; plaintiff sought a declaration from the court that the statute applies to nonhuman animals; and plaintiff sought a permanent injunction requiring defendants to apply the statute to nonhuman animals in all cases—not just to Tony. The court finds that plaintiff sufficiently pled a policy or practice claim under Rule 8

### b. Whether the FOIA Divests the Court of Jurisdiction

Defendants argue that 5 U.S.C. § 552(a)(6)(E)(iv) acts as a jurisdictional bar to policy or practice claims that relate to denials of expedited processing requests after a complete response has been provided. Plaintiff argues that a policy or practice claim overcomes the jurisdictional limits imposed by 5 U.S.C. § 552(a)(6)(E)(iv).

7

The statute provides: "A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). Plainly, the statute would divest the court of jurisdiction to review defendants' denial of plaintiff's request for records relating to Tony, as the parties agree defendants have provided a complete response to that request. The parties dispute whether the same language divests this court of jurisdiction to hear plaintiff's policy or practice claim. The parties have not cited, and the court has not identified, persuasive authority addressing whether § 552(a)(6)(E)(iv) divests the court of jurisdiction to adjudicate a policy or practice claim when it is brought concurrently with a claim based on a particular request for records that has been mooted.

Congress can create, define, and limit the jurisdiction of federal district courts. U.S. Const. art. I, § 8, cl. 9; id. art. III, § 1. Congress established district court jurisdiction over the FOIA in 5 U.S.C. § 552(a)(4)(B): "On complaint, the district court of the United States . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." "FOIA section 552(a)(4)(B) vests courts with broad equitable authority." Citizens for Responsibility & Ethics in Wash. v. DOJ, 846 F.3d 1235, 1241 (D.C. Cir. 2017) (quoting Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 20 (1974) (§ 552(a)(4)(B) does not "limit the inherent powers of an equity court")). "Courts draw on this 'equitable power' to 'enforce FOIA's terms.'" Am. Ctr. for Law & Justice v. United States Dep't of State, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (quoting Payne Enters., Inc. v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988)). Based on the court's equitable powers, a party can assert "a claim that an agency policy or practice will impair the party's lawful access to information in the future." Payne Enters., Inc., 837 F.2d at 491.

Congress specifically carved out from its broad grant of jurisdiction review of "an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). Although

plainly removing jurisdiction to review "an agency denial . . . of a request . . . after . . . a complete response", the statute does not so cleanly apply when considering a challenge to an agency's broader policy or practice pursuant the court's equitable powers. Deciding the merits of a policy or practice claim would not involve "reviewing an agency denial . . . of a request" at all. The very nature of the policy or practice claim contemplates multiple, future denials of future requests. A plaintiff must have standing to bring the claim, which requires showing that "the agency's FOIA violation was not merely an isolated incident" and that "the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." Hajro, 811 F.3d at 1103 ("a pattern or practice claim is not necessarily mooted by an agency's production of documents" in the context of Article III standing). The exercise of the court's equitable power in this situation does not lead it to review a denial of a request to expedite—which might be cured more expeditiously by an agency's tardy production than by a court's review—but instead provides primarily prospective declaratory or injunctive relief based on an agency's past practices and, importantly, its likely future practices. For those reasons, the court finds that 5 U.S.C. § 552(a)(6)(E)(iv) does not divest the court of jurisdiction to adjudicate policy or practice claims.

### c. Whether the Policy or Practice Claim Presents a Justiciable Case or Controversy

A policy or practice claim is not moot where there is injury in fact, causation, and redressability. Hajro, 811 F.3d at 1102. "[W]here a plaintiff alleges a pattern or practice of FOIA violations and seeks declaratory or injunctive relief, regardless of whether his specific FOIA requests have been mooted, the plaintiff has shown injury in fact if he demonstrates the three following prongs: (1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice. In other words, a pattern or practice claim is not necessarily mooted by an agency's production of documents." Hajro, 811 F.3d at 1103 (citations omitted); accord Payne Enters., Inc., 837 F.2d at 491 ("So long as an agency's refusal to supply information

9

evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit."). The Ninth Circuit does not require a heightened standard that the agency's conduct be "outrageous." Cf. Am. Ctr. for Law and Justice, 249 F. Supp. 3d at 281 ("District courts have since refined the Payne doctrine. To state a policy-or-practice claim, a plaintiff must plausibly allege that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA.").

Regarding the first prong, "[p]laintiffs have a number of ways to prove that the agency's FOIA violation was not an isolated event. For example, a plaintiff can provide evidence that he has been subjected to a FOIA violation more than once. Or a plaintiff can provide the court with affidavits of people similarly situated to the plaintiff who were also harmed by the pattern or practice." Hajro, 811 F.3d at 1104. Here, plaintiff has shown defendants' alleged FOIA violation was not merely an isolated incident by including two subsequent agency denials based on the same statutory interpretation. Hanneken Decl., Exs. H–I.

Regarding the second prong, plaintiff has shown it was personally harmed. "To be injured under FOIA, [a plaintiff] does not need to have a personal connection to the information he is requesting." Hajro, 811 F.3d at 1105. Rather, the required showing under this prong is simple: "he must show that he personally filed a request, and that request was delayed." Id. at 1106. ALDF filed a FOIA request (Compl., Ex. A) and that request was delayed (Compl., Ex. B).

Regarding the third prong, plaintiff has shown it faces a likelihood of future harm by defendants' policy or practice. Plaintiff alleges that it is dedicated to advancing the interests of animals through the legal system and has provided declarations describing actual subsequent harm from defendants' policy or practice. Hanneken Decl., Exs. H–I.

Plaintiff's pattern or practice claim is not moot under Article III.

**2.     Whether Tony the Tiger Is an "Individual" Under the Statute**

Because the court has jurisdiction to adjudicate plaintiff's policy or practice claim, the court turns to the merits of the claim. The parties dispute whether the term "individual" as used in § 552(a)(6)(E)(v)(I) of the FOIA encompasses nonhuman animals.

"In interpreting a statute, we first look to the plain meaning of its text." Paul Revere Ins. Grp. v. United States, 500 F.3d 957, 962 (9th Cir. 2007). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." The Wilderness Soc'y v. U.S. Fish & Wildlife Serv., 353 F.3d 1051, 1060 (9th Cir. 2003) (quoting United States v. Smith, 155 F.3d 1051, 1057 (9th Cir. 1998)); Watkins v. U.S. Bureau of Customs & Border Prot., 643 F.3d 1189, 1194 (9th Cir. 2011) (terms used in FOIA "are given their ordinary meanings"). When determining the ordinary meaning, "consulting common dictionary definitions is the usual course." California All. of Child & Family Servs. v. Allenby, 589 F.3d 1017, 1021 (9th Cir. 2009) (citing Wilderness Soc'y, 353 F.3d at 1061). "It is also 'a fundamental canon that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Wilderness Soc'y, 353 F.3d at 1060 (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)).

5 U.S.C. § 552(a)(6)(E) provides, in relevant part (emphasis added):

> (i) Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records—
>
>     (I) in cases in which the person requesting the records demonstrates a compelling need; and
>
>     (II) in other cases determined by the agency.
>
> [. . . .]
>
> (v) For purposes of this subparagraph, the term "compelling need" means—
>
>     (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an <u>imminent threat to the life or physical safety of an individual</u>; or

The court looks to the plain meaning of the statute's terms, aided by dictionary definitions and their statutory context.

First, the majority of dictionaries reviewed by this court present two prominent and common definitions for the noun individual, which the parties also identify: (1) a single human being; and (2) a particular being or thing as distinguished from a class, species, or collection. E.g., The Oxford English Dictionary, http://www.oed.com/view/Entry/94633 (last visited May 9, 2018); Dictionary.com, http://www.dictionary.com/browse/individual (last visited May 9, 2018); Mirriam-Webster, https://www.merriam-webster.com/dictionary/individual (last visited May 9, 2018); English Oxford Living Dictionary, https://en.oxforddictionaries.com/definition/individual (last visited May 9, 2018); Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/individual (last visited May 9, 2018).

Every dictionary consulted by this court includes a definition of "individual" as a person or human being.[1] In particular, the Oxford English Dictionary provides: "In contexts where a group is not specified or implied: a human being, a person." Oxford English Dictionary, supra. That ordinary, common meaning fits naturally with a plain reading of the statute: a request for records is expedited in the face of imminent threat to the life or physical safety of a human being.

The other consistently-appearing definition is not relevant in this case. The noun "individual" as used in the statute is not referring to an individual thing or being as compared to a group of individual things or beings. If a group of humans was facing imminent threat, the statute would require an expedited response, just as if an individual human faced a threat. The statute is not drawing a distinction whereby a group of beings or things is afforded less protection than an individual thing or being. That meaning of the word "individual" is also irrelevant in light of the statutory context because it does not

---

[1] This definition has not changed since well before the statute was drafted and enacted. Pub. L. No. 104-231, § 8(a), 110 Stat. 3048, 3052 (1996); e.g., Mohamad v. Palestinian Auth., 566 U.S. 449, 454 (2012) (similar definitions found in dictionaries published in the 1980's).

necessarily refer to a living organism at all. The statute explicitly concerns individuals whose lives or physical safety could face imminent threat, so a definition of "individual" that applies equally to beings without "lives" capable of facing threat would be an awkward fit within the overall statutory text.

Plaintiff's plain meaning arguments rely exclusively on the latter definition. For example, plaintiff cites the English Oxford Living Dictionary for the example that "Most of the whales in the area during the hunt were large single individuals." Dkt. 30 at 8 (citing English Oxford Living Dictionary, supra). But that example is found under the definition "A single member of a class." The other examples under that definition similarly exemplify the distinction between a group and an individual. E.g., "they live in a group or as individuals, depending on the species"; "Plants often fertilize themselves to at least some extent, so polyploid species can arise from a single individual."; "And the general body texture from one individual to another within the same species can also be quite different."; "With simple viability selection and random mating, the selection group is a single individual." English Oxford Living Dictionary, supra. A dictionary's use of plants and animals to illustrate the distinction between a group and an individual does not inform the plain meaning of the term "individual" as used in the statute.[2]

"Words that can have more than one meaning are given content . . . by their surroundings[.]" Mohamad v. Palestinian Auth., 566 U.S. 449, 457 (2012) (quoting

---

[2] Even if those examples were informative, and if the FOIA provision's definition is in fact an individual thing vis-à-vis a group, the definition and supporting examples would lead to an absurd result. But the court cannot read into a statute an "absurd" result that Congress could not plausibly have intended. Mohamad, 566 U.S. at 455. That definition would not only include plants and animals, but any other object or distinct, single item. The only limiting language would come from other parts of the statute that require such an individual has a "life" or "physical safety" that could be threatened, which arguably could limit the statute to living entities (unless non-living objects' "physical safety" can be threatened). Plaintiff misreads the statute to require an individual have its "life and physical safety" threatened. Dkt. 30 at 12 (emphasis added). Under that reading, plaintiff argues that "common sense" will "frame the universe of individuals" subject to the statute. Id. But the court cannot substitute a statute of its own creation for the language passed by Congress and presented to the President, nor can the court overlook the plain meaning of a statute's text to incorporate goals Congress achieved through entirely different animal welfare statutes.

13

Whitman v. American Trucking Assns., Inc., 531 U.S. 457, 466 (2001)). Clearly the ordinary, common meaning of "individual" within the context of the statute means a human being, and reviewing the dictionary definitions makes the conclusion even more clear. A review of dictionaries reveals two common definitions; one fits within the context of the statute as clearly as the other does not.[3] See Mohamad, 566 U.S. at 457 (rejecting alternative dictionary definition that would "make for an awkward fit in the context of the [statute]").

Although no court has addressed the definition of "individual" in an identical context, the Supreme Court assessed the ordinary meaning of "individual" as used in the Torture Victim Protection Act ("TVPA"). That court held that the ordinary meaning of "individual" encompassed "natural persons alone," rejecting an argument that it included "nonsovereign organizations." Mohamad, 566 U.S. at 453–54. That court began by looking to "the word's ordinary meaning":

> As a noun, "individual" ordinarily means "[a] human being, a person." 7 Oxford English Dictionary 880 (2d ed. 1989); see also, e.g., Random House Dictionary of the English Language 974 (2d ed. 1987) ("a person"); Webster's Third New International Dictionary 1152 (1986) ("a particular person") (hereinafter Webster's). After all, that is how we use the word in everyday parlance. We say "the individual went to the store," "the individual left the room," and "the individual took the car," each time referring unmistakably to a natural person. And no one, we hazard to guess, refers in normal parlance to an organization as an "individual." Evidencing that common usage, this Court routinely uses "individual" to denote a natural person, and in particular to distinguish between a natural person and a corporation. See, e.g., Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. ——, ——, 131 S.Ct. 2846, 2853–54, 180 L.Ed.2d 796 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home").
>
> Congress does not, in the ordinary course, employ the word any differently. The Dictionary Act instructs that "[i]n determining the meaning of any Act of Congress, unless the

---

[3] Although we recognize and enjoy that our pets and other animals have individual personalities (as an adjective), and one's quirky dog might be "quite an individual" (as a noun), those uses simply do not fit the statute's text.

14

> context indicates otherwise ... the wor[d] 'person' ... include[s] corporations, companies, associations, firms, partnerships, societies, *and* joint stock companies, *as well as* individuals." 1 U.S.C. § 1 (emphasis added). With the phrase "as well as," the definition marks "individual" as distinct from the list of artificial entities that precedes it.
>
> [. . . .]
>
> This is not to say that the word "individual" invariably means "natural person" when used in a statute. Congress remains free, as always, to give the word a broader or different meaning. But before we will assume it has done so, there must be *some* indication Congress intended such a result.

Mohamad, 566 U.S. at 454–55. Although focused on the distinction between artificial entities and humans, the Mohamad court's logic is persuasive and reinforces the conclusion this court has otherwise reached.

The court recognizes that the plain meaning of Section 552(a)(6)(E)(v)(I) has potentially unforeseen and troubling consequences. Because defendants are administrative bodies with responsibilities primarily relating to nonhuman animals, Congress may have nearly excused them from the FOIA's expedited review requirements without specifically intending to do so. The proper solution, if any, is for Congress to alter the statute's text—not for this court to do so.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (Dkt. 26) is DENIED. Defendants' motion for summary judgment (Dkt. 25) is GRANTED. The clerk shall close the case.

**IT IS SO ORDERED.**

Dated: May 25, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge